ABRAHAM V. VAN FLEET, JOHN T. BIRD, HENRY C. PITNEY AND ROBERT S. GREEN, VICE-CHANCELLORS.

---

NICHOLAS J. DOREMUS

*v.*

ALEXANDER CAMERON et al.

1. In a hearing upon bill and answer, the facts well pleaded in the answer will be taken as true, whether they be responsive to the averments of the bill or not.

2. The charter of the city of Paterson, as revised in 1861, did not expressly provide that taxes on lands within the city limits should be a lien thereon paramount to other encumbrances, yet the provisions of that charter, that such lands should be assessed for taxes to the owner thereof at their full value, that

the assessment should be valid notwithstanding any error or·omission in naming the owner, and that the mortgagee, tenant, or any person having a legal or equitable interest in the premises, might redeem the same when sold for non-payment of taxes, impliedly gave taxes such paramount lien.

3. In the exercise of its sovereign power of taxation, the state may displace prior encumbrances, although such displacement may be prejudicial to individual right.

4. A sale of land for non-payment of taxes after the expiration of the lien of the taxes upon such land is *ultra vires* and void.

5. Under the charter of the city of Paterson of 1871, unpaid taxes remain a lien upon lands, on account of which they are assessed, for at least five years from the time when they were payable.

6. Under the statute of April 2d, 1869 (*Rev. p. 1045 § 15*), in an action in which a tax title is in issue, the proper municipal officer's deed, executed with due formalities and purporting, generally. to be made pursuant to authority of law, is conclusive evidence of the title it purports to convey, and, since that statute has been in force, an answer setting up a title under such a deed need not aver the performance of acts which are essential prerequisites to the lawful exercise of the power of sale. It need only show that such a deed has been made and delivered.

On bill and answer.

*Mr. Robert I. Hopper*, for the complainant.

*Mr. John W. Griggs*, for the answering defendants.

THE CHANCELLOR.

The object of the bill is the foreclosure of a mortgage upon land in the city of Paterson, made in July, 1868, by Alexander Cameron to Henry W. Merrill, and by Merrill subsequently, in May, 1879, assigned to the complainant.

The bill alleges " that on the twenty-ninth day of July, 1881, Alpheus S. Allen, receiver of taxes &c., of the city of Paterson," sold and conveyed all the " right, title and interest of * * * Alexander Cameron in and to" the "mortgaged premises to Charles Inglis, for the term of fifty years, or some other term of years, for the taxes unpaid and in arrears assessed upon" the " premises for the year 1874." And in 1882 Inglis conveyed his right and interest in the mortgaged premises to the answering defendants, Samuel G. McKiernan and James Bergen, and that the complainant did not have notice of the sale for taxes.

By their answers the defendants, McKiernan and Bergen, aver that it is true that the receiver of taxes, by his deed dated on the 29th of April, 1881, conveyed the mortgaged premises to Inglis for the term of fifty years from the 9th day of April, 1878, and that afterwards, on April 29th, 1882, Inglis conveyed his right, title and interest in the property to them, and, further, that the property was duly assessed for the taxes of the year 1874; that the taxes assessed against it remained unpaid and unsatisfied until they were duly reported by the receiver of taxes to the board of aldermen of Paterson as delinquent and unpaid; that thereupon the board of aldermen, within the time prescribed by the charter of Paterson, issued an order, duly executed, to the said receiver to sell real estate for the satisfaction of the delin-quent taxes for the year 1874, and that in pursuance of the direc-tions of that order the receiver, after giving such notice of the sale as the law prescribed, did, on the 9th of April, 1878, sell the mortgaged premises to the mayor and aldermen of the city of Paterson for the term of fifty years, no person having bid there-for at said sale, and thereupon did issue a certificate of such sale to the mayor and aldermen of the city of Paterson as the law prescribed. Also, that afterwards, on the 29th of April, 1881, the mayor and aldermen of the city of Paterson duly assigned the certificate of sale to Charles Inglis, he having paid the taxes, interest and costs, and that Inglis then made and filed an affidavit that the owner or owners of the land did not reside within the city of Paterson; that their post-office address could not, upon due inquiry, be found or ascertained, and that there was no occu-pant of the land, and thereupon the receiver of taxes made a deed to him, as has already been stated.

In a hearing upon bill and answer, the facts well pleaded in the answer will be taken as true, whether they be responsive to the averments of the bill or not. Considering all parts of the answer before me, it must unquestionably be held to deny the averment of the bill that merely the " right, title and interest of Alexander Cameron" in the mortgaged premises was sold. It distinctly avers that the *premises* were sold. If the complainant had intended to insist upon the fact that the sale and receiver's

deed were, in express terms, only of the interest of Cameron—in other words, that they were of the premises subject to the mortgage—he should have filed a replication and taken proofs. As the case is presented, I must assume that all rights in the premises which the receiver could sell and convey were intended to be sold, and that the deed of the receiver of taxes purports to convey all that such officer could convey.

This reference to the form in which the case is presented is induced by the evident misapprehension of the complainant's counsel as to the effect which is to be given to the allegations of the bill in this hearing.

The complainant's main reliance is upon the following insistments:

*First.* That the taxes assessed in 1874 were not a lien upon the premises paramount to his mortgage.

*Second.* That, if they were a paramount lien, such lien continued for two years only, and expired before the proceedings for sale, and sale itself, were had, and that therefore no title to the premises passed in virtue of the receiver's sale.

Under the first of these insistments it was argued (*a*) that when the complainant's mortgage was made, in 1868, taxes were not, by law, made a lien upon lands in Paterson, paramount to other encumbrances thereon; and (*b*) that a subsequent law making taxes a lien, superior to a mortgage that then existed, would be unconstitutional, in that it would impair the obligation of a contract theretofore made.

The city of Paterson was incorporated in 1851. *P. L. of 1851 p. 444.* In 1861 (*P. L. of 1861 p. 320*) its charter was revised. In that revision it was provided that assessments for taxes should be and remain a lien upon the lands assessed, for five years; that the land should be sold for non-payment of the tax; that "the owner, mortgagee, occupant or any person having a legal or equitable interest" in the lands might, within one year, redeem the lands, and that thereupon "the said owner, mortgagee or occupant might re-enter and repossess the lands as if the sale had not been made."

. The law stood in this way when the complainant's mortgage was made.

In 1869 (*P. L. of 1869 p. 706*) the charter was again revised, retaining the provisions of the act of 1861, above referred to.

In 1871 (*P. L. of 1871 p. 808*) it was further revised, when it was enacted that assessments for taxes should be and remain a lien upon all property, on account of which the assessment should be made, with interest, costs and penalties, " from the time when the taxes were payable." There was no specification of a length of time for which the lien should continue. This revision also provided for a sale for the non-payment of taxes, for the issuance of a certificate of sale, and that at any time within twelve months after the issue of such certificate, " the owner, mortgagee, tenant or any person having a legal or equitable interest" in the property sold, might redeem it from the sale. This revision was in full force when the property in question was assessed for the taxes of 1874.

It is perceived that each of the statutes referred to provided that the assessment for taxes should be a lien, and that a mortgagee of the property, after it should be sold for non-payment of such assessment, might redeem within a specified time.

In the *City of Paterson* v. *O'Neill, 5 Stew. Eq. 386*, the question whether the assessment for taxes, under the revised charter of 1871 for Paterson, was made a lien, paramount to an existing mortgage upon the property assessed, was determined by the decision of the court of errors and appeals, which held that, although such paramount lien was not expressly declared, it was given by implication from the provisions that the estate of the mortgagee should be exempted from assessment; that the assessment, to the full value of the property, should be made against the owner; that it should be valid, notwithstanding any error or omission in naming the owner; and that the mortgagee, tenant or any person having a legal or equitable interest in the premises might redeem the same when sold.

The greatest importance was attached to the last of these provisions. As to it Judge Dodd, who wrote the opinion of the court, said : " I cannot doubt that the intention is evinced to

make the lien of the tax paramount to that of the mortgage. Unless this be so, no good or satisfactory reason is perceived why this provision on behalf of the mortgagee was enacted. If his estate were intended to be left unaffected by and paramount to the tax, why should he need to redeem? Why redeem or buy back what had not been sold away?"

The charter of 1861, which was in force, as has been said, when the mortgage here in question was made, provided that all property should be assessed at its full value against the owner thereof; that it should be valid notwithstanding any error or omission in naming the owner, and that the owner, mortgagee, occupant or any person having a legal or equitable interest in the premises might redeem the same when sold.

It is noted that it contained all the factors that influenced the decision of the court of errors and appeals in its construction of the charter of 1871, save that in the last-mentioned charter mortgages were exempted from taxation. I fail to perceive that that provision, although it was stated in the opinion of Judge Dodd, had potent significance in the decision. It is impossible to escape the conviction that the legislature's intention to make the taxes paramount to the lien of a mortgage is as plainly apparent in the charter of 1861 as it was in the charter construed by the court of errors and appeals. Indeed, if anything, it is more plainly evinced, for in the charter of 1861 there is no provision that the purchaser shall give notice before he shall receive a deed. Such a provision in the charter of 1871, which requires a notice to the owner alone and not to the mortgagee, indicated to the mind of the chancellor, in his decision of *Paterson v. O'Neill*, that the legislative intent was that the tax was not to be paramount to a mortgage. Construing the charter of 1861 as indicated, it is perceived that there has been no change in the legal relation of the tax and mortgage liens since the complainant's mortgage was made, and consequently the question does not arise, whether, after a mortgage has been made, a tax can, by law, be given precedence in lien upon the mortgaged land, and thus, to its extent, supersede and impair the obligation of the mortgage.

But had such question arisen, it must have been determined against the complainant, for it is well settled that, in the exercise of its sovereign power of taxation, the state may displace prior encumbrances, although the displacement may be prejudicial to individual right. *Hopper* v. *Malleson, 1 C. E. Gr. 386 ; Campbell* v. *Howland, 5 C. E. Gr. 186 ; Morrow* v. *Dows, 1 Stew. Eq. 459 ; Trustees &c.* v. *Trenton, 3 Stew. Eq. 679 ; Howell* v. *The Essex Road Board, 5 Stew. Eq. 672 ; Lydecker* v. *Palisade Land Co., 6 Stew. Eq. 415 ; Hand* v. *Startup, 11 Stew. Eq. 115*. The only inquiry would have been whether the legislative intent was clearly manifested, and, as has been seen, that inquiry has been authoritatively answered by the court of errors and appeals in *Paterson* v. *O'Neill.*

This brings me to the consideration of the second insistment of the complainant, that the lien for the taxes of 1874 had expired before the sale was had on the 9th of April, 1878.

If the complainant be correct in this contention, the sale was ultra vires and void. *Johnson* v. *Van Horn, 16 Vr. 136 ; Field* v. *West Orange, 10 Stew. Eq. 434, 12 Stew. Eq. 60 ; Kirkpatrick* v. *New Brunswick, 13 Stew. Eq. 56*.

By the sixtieth section of the charter of 1861 assessments for taxes thereafter to be made on account of any lands were made a lien upon such lands for five years from the time when the taxes were payable. The eighty-fifth section of the revision of the charter in 1869 contained the same provision, and that revision reserved from repeal any act or part of act theretofore existing.

The charter of 1871 omitted the provision that the lien should continue for five years, but instead thereof provided that the taxes should be and remain a lien indefinitely from the time when they were payable. By the one hundred and seventy-fifth section of this act of 1871, after the express repeal of several statutes and general repeal of inconsistent legislation, it is provided, as in the act of 1869, that nothing in its repealing clauses should destroy, impair or take away any right or remedy acquired or given by any act or part of act thereby repealed, except where in the act it was expressly so provided.

Thus the law stood at the time of the sale of the land here involved.

Now, as has been seen, previous to the act of 1871, the right of the city of Paterson to a lien for unpaid taxes for five years, was secured by law. There was no express repeal of the provisions of law which invested it with that right. The language of the act of 1871, as to duration of the lien, is of indefinite import. It means either that the lien shall be unlimited in point of time, or, in failing to fix time for the continuance of the lien, to leave the provisions of the law, upon that point, undisturbed. In either event a lien for five years is assured, and, when the sale was had in 1878, the lien had not expired.

It was also urged for the complainant that the fifty-second section of the charter of 1871 requires that the goods and chattels of a delinquent taxpayer shall be exhausted by distress and sale before his land shall be resorted to, and that, as such exhaustion is not averred in the answer, a title in the defendants paramount to the mortgage does not appear.

It is shown that that section provides that on and after the 15th of January in each year (changed by subsequent legislation to the third Monday in October) it shall be the duty of the receiver of taxes to levy and make any unpaid tax assessed on real or personal property, by distress and sale of the goods and chattels of delinquent taxpayers, the proceeds of the sale to be applied first to the satisfaction of the tax on the personal estate, and next to the satisfaction of the tax upon the real estate, and that the next succeeding section provides that on or before the third Monday in May of each year the receiver shall present to the board of aldermen a full return and statement of the taxes remaining unpaid, " in whole or in part," on the first of that month, and that the board of aldermen shall thereupon order the sale of real estate, and it is urged that it was obviously the intention of the lawmakers that personalty should be exhausted in the satisfaction of taxes before the realty should be resorted to for that purpose, and that this intention is so strongly indicated, not only by the prescribed order of procedure, but also by the language of the fifty-third section, which contem-

Doremus v. Cameron.

plates the satisfaction of taxes already partially satisfied, that the legislative purpose is hardly open to doubt. That this is the law's proper construction was not controverted at the argument. The discussion there was, whether it was necessary for the defendants to affirmatively aver a compliance with all the statutory requirements to a perfect tax sale, including an averment, where it did not appear whether or not there were goods or chattels, either that such personalty did not exist, or that, existing, it had been exhausted.

It is a familiar principle that the power to sell for the non-payment of a tax must be strictly pursued, or the sale will be void; and a party claiming title under a corporation tax sale must, unless the rule is varied by legislative enactment, show that every prerequisite to the exercise of the power has been complied with. No intendment will be made in favor of the legality of such proceedings. *2 Dill. Mun. Corp.* § *820; Hopper* v. *Malleson, 1 C. E. Gr. 382; State* v. *Jersey City, 7 Vr. 188, 192; State* v. *Newark, 7 Vr. 288; Woodbridge* v. *Allen, 14 Vr. 262; Jones* v. *Landis Township, 21 Vr. 374, 379.*

Under the rule thus stated, in the absence of statutory regulation, there can be no doubt that failure of the defendants to aver in their answer the performance of every essential prerequisite, would be fatal to them upon this hearing on bill and answer.

But we have a statute, the act of April 2d, 1869 (*Rev. p. 1045* § *15*), which, according to the established construction, not only makes the recitals in deeds by municipal officers, acting under authority of law, evidence, but also makes those deeds themselves conclusive, as to the transmission of title, until the proceedings upon which they are founded shall have been directly attacked and set aside. In *Woodbridge* v. *State, 14 Vr. 262,* Mr. Justice Depue, in writing the opinion of the court of errors and appeals, after stating that recitals in such deeds are made evidence, and that that which is not recited must be proved *aliunde* where occasion may require, proceeds to state that the statute enacts that proceedings upon which deeds of municipal officers, declarations of sale and conveyances are founded shall not be

subject to be questioned collaterally, but may, at any time, be-reviewed by *certiorari* or other proper proceeding in the supreme or circuit courts, and then adds: "But in an action of eject-ment, or any other action in which the title is in issue, the pro-ceedings on which the deed, declaration of sale or conveyance is founded are not subject to be questioned, and the deed, declara-tion of sale or conveyance is made evidence of the title. If the deed, declaration of sale or conveyance is proper in form and purports to have been made pursuant to a public or municipal' authority competent to order or make a sale of lands for that purpose generally, and the deed, declaration of sale or convey-ance has been executed with proper formalities, it is conclusive evidence, in such an action, of the title it purports to convey."

Numerous decisions of the supreme court exhibit the settled adoption of this construction of the statute referred to.

In this case the title of the defendants, McKiernan and Bergen, is in issue. The bill alleges that the proper municipal officer, vested by law with authority, sold and conveyed for unpaid' taxes, and the answer, yet more specifically, avers the delivery of the deed and the general legal authority of the officer. The averments of the pleadings in failing to mention, assume the pro-priety of the form and execution of the deed. Here, then, under this statute, is an obstacle which forbids the inquiry into the regularity of the proceedings upon which the deed is based. The deed itself is conclusive as to their regularity until a direct attack shall have been successfully made upon them. What more, then, do the defendants need to establish their case than the mere production of such a deed? That production would be enough in ejectment and it is enough here. It establishes every prerequisite to the validity of the proceedings by which it was produced, and there can be no necessity for the answer to set out the proceedings that were had.

The last point to be considered is the insistment that the com-plainant did not, as mortgagee, have notice of the tax sale so that he might redeem before the delivery of the deed. This point was urged in consequence of the suggestion thrown out by Judge Dodd in *Paterson* v. *O'Neill,* that such notice might be

Township of Raritan v. Port Reading R. R. Co.

necessary. The judge, in speaking of the right of the mortgagee to notice, said : " The absence of an express provision for notice does not conclusively manifest an intent that no notice shall be given. Whether, under the charter now in question, notice to the mortgagee by the holder of the tax title would be necessary, in order to cut off the mortgagee from the right to redeem, is a question not raised in this case, and no opinion respecting it is now meant to be intimated."

It is perceived that the notice here contended for is a parcel of the proceedings behind the tax deed. Because of the force which the statute gives to the deed, it would be useless for me to consider it.

Before bringing this suit the complainant should have directly attacked the proceedings, sale &c. which resulted in the tax deed. As the case stands, the decree must be that the mortgaged premises be sold, subject to the estate for years of McKiernan and Bergen therein, to satisfy the complainant's mortgage, and that Cameron's equity of redemption in the remainder be foreclosed.

The answering defendants will be allowed costs.